## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-23740-COOKE/DAMIAN

ELIEN PEREZ PEREZ,

      Plaintiff,

vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT & RECOMMENDATION ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT [ECF NOS. 18 AND 21]

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment [ECF Nos. 18 and 21]. Plaintiff, Elien Perez Perez ("Plaintiff" or "Mr. Perez"), seeks reversal and remand of the Decision of the Administrative Law Judge ("ALJ") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter was referred to the undersigned for a Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge. [ECF Nos. 2, 16]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' briefing, the administrative record [ECF No. 15], and all relevant authorities and is otherwise fully informed in the premises. For the reasons that follow, the undersigned recommends that Plaintiff's Motion for Summary Judgment [ECF No. 18] be denied and that Defendant's Motion for Summary Judgment [ECF No. 21] be granted.

## I.   BACKGROUND

### A.   Mr. Perez's Claim For Benefits

Mr. Perez alleges disability beginning on October 6, 2014, due to right eye blindness, left eye vision problems, and major depression. (R. 361-372, 391).[1] Mr. Perez was 24 years old on his alleged disability onset date, such that he falls within the definition of a younger individual (age 18-49). (R. 25); *see also* 20 CFR § 416.963. Mr. Perez has a high school education and past work experience as a dining room attendant. (R. 24-25, 391).

### B.   Mr. Perez's Testimony Regarding His Disabilities

At a hearing before the ALJ on September 16, 2020, Mr. Perez appeared and testified with the assistance of a Spanish interpreter. (R. 56-74). He testified that his eyes get "very red" and "very hot" which causes him pain. (R. 64). He also testified that his eye condition led to his depression. *Id.*

According to Mr. Perez, he spends a typical day at home, where he lives with his mother and father. (R. 68).  He testified that his mother prepares his breakfast and lunch because he cannot prepare his own meals. (R. 69-70).  Mr. Perez further testified that he can drive short distances while wearing sunglasses and drives up to 40 miles per hour. (R. 65).

As for his past relevant employment, Mr. Perez testified that he worked as a bus boy at The Cheesecake Factory from 2017 through 2019, and he earned $19,346 in 2018 and

---

[1]  All references to "R." refer to the transcript of the Social Security Administration filed on January 10, 2022. [ECF No. 15]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

2

$19,407.68 in 2019. (R. 61-63). Mr. Perez testified that he decided to leave his job because of his worsening condition. (R. 63-64).

### C.    *Expert Opinions And Relevant Medical Evidence Regarding Mr. Perez*

The record contains treatment notes from numerous doctors, social workers, and other professionals regarding Mr. Perez's condition. Below is a non-exhaustive summary of the relevant medical evidence and expert opinions regarding Mr. Perez's impairments, as well as the opinion of the impartial vocational expert ("VE").

### 1.    *Relevant Medical Evidence And Expert Opinions Regarding His Impairments*

Mr. Perez was treated at Bascom Palmer Eye Institute from September 2015 to August 2020. (R. 502-81, 644-70, 671-78, and 756-59). The treatment notes from that time state that Mr. Perez suffered a chemical explosion that affected both eyes. (R. 552-53). From 2016 to 2018, Mr. Perez was seen several times by Dr. Priscilla Sotomayor, O.D., who diagnosed him with bilateral eye injuries, sequela, corneal neovascularization of the left eye, irregular astigmatism of the left eye, cicatricial entropion of the left upper eyelid, and photophobia of the left eye. (R. 510-40).

Regarding his mental impairments, the record shows that Mr. Perez was treated at Citrus Health Network from January 2017 to November 2020 by Dr. Rafael Garcia, M.D. (R. 583-99, 679-95, 723-30 and 767-79). At a psychiatric examination conducted on January 18, 2017, Dr. Garcia noted that Mr. Perez was discharged from Jackson Memorial Hospital where he had been admitted under the Baker Act for suicidal ideas (R. 597). Although Mr. Perez reported experiencing some anxiety and sadness at times, his mental status examinations were generally stable and within normal limits. (R. 584, 586-91, 680, 682, 687-89, 723-30, 767, 774, 776, and 779).

3

### 2.   *Vocational Expert Testimony*

At the hearing before the ALJ, an impartial vocational expert ("VE") testified that a person with Mr. Perez's same age, education, work experience, and residual functional capacity ("RFC") (without the limitations in the RFC that he "retains frequent right eye near and far acuity; and frequent right eye depth perceptions, accommodation and color but unlimited field of vision") can perform his past work experience as a dining room attendant. (R. 46). When asked whether other jobs exist in significant numbers in the national economy for a person with Mr. Perez's age, education, work experience, and RFC, the VE provided three representative occupations such a person could perform: rack loader, dryer attendant, and fruit picker. (R. 46-47). The VE testified that nationally there were 21,400, 66,000 and 43,000 jobs in each of these respective occupations. *Id*. Counsel for Mr. Perez did not object to any part of the VE's testimony, nor did he question the foundation for it.

## II.   PROCEDURAL HISTORY

Mr. Perez applied for DIB and SSI benefits on May 16, 2019. (R. 361-72). His application was initially denied on August 12, 2019, and again, upon reconsideration, on October 30, 2019.  (R. 135-36, 179-80). Mr. Perez then requested a hearing, which was held before an ALJ on September 16, 2020. (R. 54). On February 24, 2021, a supplemental hearing was held with a different ALJ. (R. 33). On March 31, 2021, the later ALJ issued the Decision finding that Mr. Perez has not been under a disability under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act since October 6, 2014, the alleged disability onset date, through the date of the Decision. (R. 26). Mr. Perez then requested review of the ALJ's Decision (R. 480-85), and on October 6, 2021, the Appeals Council denied his request for

review, rendering the ALJ's Decision as the Social Security Commissioner's "final" determination. *Id. See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted his administrative remedies, on October 22, 2021, Mr. Perez filed the instant action seeking review of the ALJ's Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). Thereafter, Mr. Perez filed a Motion for Summary Judgment on March 28, 2021. [ECF No. 18 ("Motion")]. Defendant, Kilolo Kijakazi, Acting Commissioner of the SSA ("Defendant" or the "Commissioner"), filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on May 26, 2022. [ECF No. 21("Response")]. Mr. Perez did not file a Reply.

Both parties' Motions are fully briefed and ripe for adjudication.

## III.    APPLICABLE LEGAL STANDARD

Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1328c(a)(1)-(2). A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

Here, the ALJ concluded that Mr. Perez is not disabled under Section 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act based on the five-step process that must be applied to determine whether a claimant is disabled. (R. 26). *See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *Id*. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574-75, 416.974-5. If a claimant can engage in SGA, the ALJ will find that he is not disabled for that period of time. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. *Id*. If the claimant does not have an MDI or combination of impairments that is severe, he is not considered disabled. *Id*.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor.*" Buckwalter v. Acting Comm'r of Soc. Sec.*,

5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform his past relevant work, in light of his RFC. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any of his past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do other work, he is not disabled. *Id*. If he is unable to do other work, he is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given his impairments. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles ("DOT") and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

Applying the foregoing process to Mr. Perez's claim for benefits, the ALJ found that: (1) Mr. Perez engaged in SGA from September 2017 to December 2019 but that there has been a continuous 12-month period during which Mr. Perez did not engage in SGA; (2) during the period he was not gainfully employed, his "right eye vision loss, left eye reduced vision, major depressive disorder, and generalized anxiety disorder" were severe

impairments; and, (3) his combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404. (R. 18–19). The ALJ further found that Mr. Perez had the RFC to perform a reduced range of medium work, as defined in 20 C.F.R Sections 404.1567(c) and 416.967(c), except that he could never climb ladders, ropes, or scaffolds, must avoid even moderate exposure to hazards, and could perform occupations that can be performed with a patch over one eye. (R. 20-21). The ALJ further found that Mr. Perez retains the ability to understand and remember short, simple instructions; perform simple, routine, and repetitive tasks; make simple work related decisions; interact occasionally with supervisors, co-workers, and the general public; and adequately adapt to simple, gradual changes in the workplace, but that he cannot perform production pace work. *Id.* The ALJ also found that Mr. Perez retains frequent right eye near and far acuity and frequent right eye depth perceptions, accommodation, and color, but unlimited field of vision. *Id.* As such, according to the ALJ, (4) Mr. Perez was able to perform his past relevant work as a dining room attendant; and, alternatively, that (5) he could perform other jobs that exist in significant numbers in the national economy. (R. 24–25). Therefore, the ALJ determined that Mr. Perez was not disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. (R. 26).

## IV.    ISSUES RAISED IN THE PARTIES' MOTIONS

In his Motion for Summary Judgment, Mr. Perez argues that the VE's testimony does not constitute substantial evidence upon which the ALJ could properly rely. Mot. at 5. Specifically, he argues: (1) the hypothetical question posed to the VE did not contain all of the limitations from the ALJ's RFC assessment; (2) the jobs of dining room attendant, rack loader, and drier attendant, which the VE testified Mr. Perez could perform, all require work-

related activities precluded by his RFC; and (3) the VE vastly overstated the number of full-time rack loader and drier attendant jobs in the national economy. *Id*. at 5-6. Mr. Perez argues that these issues with the VE's testimony warrant reversal of the ALJ's Decision or, alternatively, remand with instructions for the ALJ to posit a hypothetical that includes all of his functional limitations and to obtain testimony from a VE that is consistent with the information contained in the DOT and with published government jobs incidence data. *Id*. at 13.

In the Commissioner's Response and Cross-Motion for Summary Judgment, she argues that the ALJ's Decision should be affirmed because Mr. Perez fails to satisfy his very high burden of showing he could not perform his past relevant work. According to the Commissioner, the ALJ's failure to include an additional visual limitation in the hypothetical question posed to the VE was harmless, and there was no error with the ALJ's finding that Mr. Perez could interact occasionally with supervisors, co-workers, and others. The Commissioner also argues that Mr. Perez has not demonstrated that the ALJ was required to independently verify the VE's testimony. Finally, the commissioner argues that the Court should not consider information Mr. Perez failed to raise during the hearing before the ALJ. *See* Resp. at 6-12.

## V.    APPLICABLE STANDARDS FOR REVIEW OF THE ALJ'S DECISION[2]

The Court's review of the ALJ's Decision is limited to determining whether it is supported by substantial evidence and whether the correct legal standards were applied.

---

[2] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB cases is generally applicable to SSI cases.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's Decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.    DISCUSSION

The Court discusses each of Mr. Perez's challenges below.

### A.    Whether the ALJ's Failure To Include All Of Mr. Perez's RFC Limitations In The Hypothetical Question Posed To the Vocational Expert Warrants Reversal

During the supplemental hearing, the ALJ asked the VE to consider the following hypothetical:

> I'd like you assume someone of the same age, the same education, and work experience as Mr. Perez. The individual is limited to the medium exertional level with the following additional limitations. The individual can never climb ladders, ropes, and scaffolds. The individual is limited to frequent stooping. The individual is limited to frequent crawling. The individual must avoid even moderate exposure to hazards. The individual is limited to performing occupations that can be performed with one patch over one eye. The individual is limited to – sorry. The individual can understand, remember short, simple instructions, can perform simple, routine, and repetitive tasks. The individual can make simple, [INAUDIBLE] decisions. The interviewee [sic] is able to interact occasionally with supervisors, co-workers, and the general public. The individual can adequately adapt to simple gradual changes in the workplace. The individual cannot perform production pace work. Is the individual capable of performing the past work?

10

(R. 45-46). The VE responded that such an individual would be able to perform Mr. Perez's past work as a dining room attendant, as well as other jobs existing in significant numbers in the national economy such as rack loader, drier attendant, and fruit picker. (R. 46-47).

At step four of her Decision, the ALJ agreed with the VE's conclusions and found that Mr. Perez is capable of performing his past relevant work as a dining room attendant. (R. 25).

Although the ALJ determined at step four that Mr. Perez is capable of performing his past relevant work, she proceeded to make alternative findings at step five. (R. 26). Based on the VE's testimony and considering Mr. Perez's age, education, work experience, and RFC, the ALJ found that Mr. Perez "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" such as rack loader and drier attendant. (R. 26). Therefore, based on her step four and alternate step five findings, the ALJ determined that Mr. Perez has not been disabled, as defined in the Social Security Act, from October 6, 2014, through the date of the Decision, because there are jobs in the national economy that Mr. Perez is capable of performing. *Id.*

In his Motion for Summary Judgment, Mr. Perez asserts that the ALJ failed to include in the hypothetical question to the VE the additional limitations included in her RFC assessment that Mr. Perez "retains frequent right eye near and far acuity; and frequent right eye depth perceptions, accommodation and color but unlimited field of vision." Mot. at 6 (quoting R. 20-21). Mr. Perez argues that the ALJ's failure to consult the expert to inquire how these additional limitations might affect the performance and/or number of jobs in existence for a hypothetical claimant like himself constitutes reversible error. *See id.*

In response, the Commissioner contends that Mr. Perez's past relevant work as a dining room attendant (as generally performed in the national economy) requires no near acuity, depth perception, color vision, or field of vision, and only occasionally requires far acuity. Resp. at 8 (citing DOT 311.677-018, 1991 WL 672696 (dining room attendant)). Thus, according to the Commissioner, the omission of Mr. Perez's additional visual limitations from the hypothetical question described above is harmless. *Id*.

After assessing a claimant's RFC, the ALJ must determine at step four whether the claimant can perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant bears the burden of proving he could not perform his past relevant work either as he performed it or as it is generally performed in the national economy. *See Jackson v. Bowen*, 801 F.2d 1291, 1293–94 (11th Cir. 1986); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) ("At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing his past relevant work.") (internal citations omitted).

At the fifth step, the burden shifts temporarily to the Commissioner to show that there are other jobs available in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1512. The ALJ makes this determination by considering both the DOT and testimony from an impartial VE. *See Buckwalter*, 5 F.4th at 1321.

This Court's role is not to decide the facts anew but, rather, to determine whether the ALJ's Decision is supported by substantial evidence. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Where the hypothetical question posed by the ALJ does not comprehensively describe the claimant's

impairments, the ALJ's denial of benefits, if based significantly on the VE's testimony, is not supported by substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1562–63 (11th Cir. 1985).

However, an ALJ's errors may be harmless if they do not prejudice the claimant. *See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (holding that ALJ's failure to include claimant's driving limitation in hypothetical posed to VE was harmless because the jobs identified by the expert in response did not appear to involve driving).

Here, the ALJ found at step four that Mr. Perez is capable of performing his past relevant work as a dining room attendant and that such work did not require performance of work-related activities precluded by his RFC. (R. 24).  In finding that Mr. Perez can perform his past relevant work, the ALJ concurred with the VE's testimony that a "hypothetical individual with the same age, education, and experience as the claimant and who possessed the residual functional capacity set forth [above] would be able to perform the claimant's past work." *Id*. However, as discussed above, the hypothetical questions posed to the VE did not include Mr. Perez's additional visual limitations from his RFC. *Compare* (R. 20 (ALJ's RFC assessment)) *with* (R. 45-46 (hypothetical posed to VE)). Because the hypothetical question posed to the VE did not comprehensively describe Mr. Perez's impairments, the undersigned agrees with Mr. Perez that this was an error on the ALJ's part.

Nevertheless, the ALJ's failure to include Mr. Perez's additional visual limitations regarding his near acuity, far acuity, depth perception, and color vision in the hypothetical posed to the VE is harmless because the DOT specifically states that the job of dining room attendant does not require near acuity, depth perception, or color vision, and only occasionally requires far acuity. *See* DOT 311.677-018, 1991 WL 672696 (noting that near acuity, depth perception, and color vision are not required for the job of dining room attendant

13

and that far acuity is only required for up to one-third of the time). Mr. Perez does not explain how the additional visual limitations excluded from the hypothetical preclude him from performing the essential functions of a dining room attendant.

The undersigned finds that Mr. Perez has not met his burden of establishing reversible error by the ALJ at step four of her analysis and that the ALJ's failure to include any visual limitations in the hypothetical posed to the VE was harmless because it would not have made a difference as to whether Mr. Perez was capable of performing his past relevant work and, therefore, did not affect the outcome of Mr. Perez's case. *See Washington*, 906 F.3d at 1359 ("At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing his past relevant work"); *see also Jones*, 492 F. App'x at 72-73 (ALJ's failure to include driving limitation in hypothetical was harmless because it did not affect the outcome of claimant's case).[3] Accordingly, to the extent Mr. Perez seeks summary judgment based on the ALJ's failure to include all of his RFC limitations in the hypothetical question posed to the VE, the undersigned recommends that the Motion be denied.

**B.** ***Whether Mr. Perez's RFC Precludes Him From Performing The Jobs Identified by the Vocational Expert***

Mr. Perez next argues that the VE's testimony does not constitute substantial evidence supporting the ALJ's Decision because the jobs of dining room attendant, rack loader, and

---

[3] Similarly, the DOT definitions for the two jobs identified by the ALJ at the alternate step five analysis (rack loader and drier attendant) do not require near acuity, far acuity, depth perception, or color vision. *See* DOT 590.687-018, 1991 WL 684603 (rack loader); DOT 581.686-018, 1991 WL 684215 (drier attendant)). Nor does Mr. Perez explain how the additional visual limitations excluded from the hypothetical preclude the essential function of either of these jobs.

14

drier attendant, which the VE testified Mr. Perez could perform, all require work-related activities inconsistent with his RFC limitations. Mot. at 6.

In assessing Mr. Perez's RFC, the ALJ determined that Mr. Perez can "interact occasionally with supervisors, co-workers and the general public[.]" (R. 20). Mr. Perez contends, however, that the job of dining room attendant, as defined by the DOT, requires a high level of interaction between co-workers and the general public. Mot. at 7. Mr. Perez also points to data for dining room attendants from the Occupational Requirements Survey ("ORS"), a product of the U.S. Bureau of Labor Statistics ("BLS"), which indicates the following:

> o 78.3 percent of workers are required to speak
> o 97.1 percent of workers indicated their supervisor is present
> o 19.4 percent of workers are required to have verbal interaction constantly, every few minutes
> o 52.3 percent of workers are required to have verbal interaction not constantly, but more than once per hour
> o 95.2 percent of workers are required to interact with the general public

*Id.*

Additionally, according to the ALJ's RFC assessment, Mr. Perez is unable to perform production pace work. However, Mr. Perez points to ORS data which shows that 72 percent of dining room attendants indicated they do not have the ability to pause work as evidence that his RFC precludes him from working as a dining room attendant. *Id.* He also asserts that all three jobs cited by the ALJ as jobs he can perform—dining room attendant, rack loader, and drier attendant—carry a temperament rating of "R" for "Performing repetitive or short cycle work." *Id.* According to Mr. Perez, this rating is defined in the Revised Handbook for Analyzing Jobs ("RHAJ") as "performing a few routine and uninvolved tasks over and over again according to set procedures, sequence, or pace with little opportunity for diversion or

15

interruption," which he argues connotes work done at a production pace. *Id.* (citing U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs 10-2 (1991)).

Mr. Perez argues that neither the VE nor the ALJ identified these apparent conflicts or explained how he might still perform the jobs identified despite the fact that they require performance of work-related activities the ALJ herself found he was incapable of doing. *Id.*

In response, the Commissioner argues that Mr. Perez's arguments do not establish any error in the ALJ's Decision. Resp. at 8. The Commissioner first contends that the description for dining room attendant relied upon by Mr. Perez only translates to a requirement of occasional talking and hearing, which the ALJ found to be Mr. Perez's limit in her RFC assessment. *Id.* The Commissioner also argues that the ALJ only needs to resolve apparent conflicts between the DOT and the VE's testimony and did not need to address conflicts between the VE's testimony and data from the ORS or RHAJ. *Id.* (citing SSR 00-4p).

The undersigned agrees that the record does not reflect an apparent conflict that precluded the ALJ from relying on the VE's testimony. Initially, the undersigned finds that Mr. Perez's RFC is not inconsistent with work as a dining room attendant. The DOT definition for dining room attendant states, in part, that a dining room attendant "[m]ay run errands and deliver food orders" and "[m]ay transfer food and dishes between floors[.]" DOT 311.677-018; 1991 WL 672696. The word "may" in the DOT does not indicate that a worker will sometimes perform these tasks, but rather that some workers in different establishments generally perform one of the varied tasks listed. *Dictionary of Occupational Titles*, "Parts"; 1991 WL 645965. Moreover, according to the DOT, the need for a dining room attendant to function in relation to people is "not significant," and the job only requires talking and hearing

16

occasionally—defined as up to one-third of the time during work—which is in line with Mr. Perez's RFC of occasional interaction with others. *See* DOT 311.677-018; 1991 WL 672696.

The undersigned finds no apparent conflict between Mr. Perez's RFC and the VE's testimony that he can perform his past relevant work as a dining room attendant, and, therefore, the ALJ did not err in relying on the VE's testimony.

Second, the undersigned is not persuaded by Plaintiff's reliance on ORS data and the RHAJ. As the Commissioner points out, the Commissioner has not taken administrative notice of ORS data or the RHAJ and has not recognized either as authoritative. *See* 20 C.F.R. § 416.966(d). Nor does the ALJ have a duty to investigate apparent conflicts between the VE's testimony and ORS data or the RHAJ. Pursuant to Social Security Ruling 00-4p ("SSR 00-4p"), the ALJ has an affirmative duty to identify and resolve apparent conflicts between the DOT and a VE's testimony. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *Washington*, 906 F.3d at 1362. However, this affirmative duty to resolve conflicts does not extend to other sources outside the DOT. *See id*. For example, in *Webster v. Commissioner of Social Security*, the Eleventh Circuit held that the duty to investigate apparent conflicts does not extend to conflicts between the VE's testimony and statistics provided by the Bureau of Labor Statistics that are not part of the SSA's regulatory scheme. 773 F. App'x 553, 556 (11th Cir. 2019). *See also Gaspard v. Social Security Admin. Com'r*, 609 F. Supp. 2d 607, 614 (E.D. Tex. 2009) (holding that the court could not conclude that a RHAJ-based conflict runs afoul of either circuit law or SSR 004p without proof that the Commissioner takes administrative notice of RHAJ information or otherwise embraces it as authoritative). Because the Commissioner has not taken administrative notice of the ORS or RHAJ and the ALJ has no duty to resolve conflicts between those sources and a VE's testimony, the undersigned finds that Mr. Perez has not

demonstrated that the ALJ's finding that Mr. Perez can perform work as a dining room attendant, rack loader, and drier attendant is not supported by substantial evidence.

For the foregoing reasons, the undersigned recommends Plaintiff's Motion be denied to the extent he seeks summary judgment on the grounds there is a conflict between his RFC and his ability to perform the jobs recommended by the VE.

### C. Whether The Vocational Expert's Overstatement Of The Number of Full-Time Rack Loader And Drier Attendant Jobs In The National Economy Requires Remand

The VE testified that there were approximately 29,400 full-time rack loader jobs and 66,000 drier attendant jobs in the national economy, estimates that the ALJ ultimately adopted in her Decision. (R. 26, 46). Counsel for Mr. Perez did not object to the VE's testimony or job number estimates during the hearing. However, on appeal, he now provides the Court with labor market data from SkillTran's Job Browser Pro, which shows that there were only 111 and 9 full-time rack loader and drier attendant jobs in the national economy for the year 2020. Mot. at 8. Mr. Perez alleges this data is frequently relied upon by VEs as a source of estimated job incidence. *Id.* Mr. Perez also avers that BLS data shows 64,240 jobs in existence for the entire Standard Occupational Classification group to which both rack loader and drier attendant belong and that this Classification contains 289 other jobs. *Id.* According to Mr. Perez, these statistics highlight the vast disparity between the VE's estimates of 21,400 and 66,000 rack loader and drier attendant jobs, respectively, and the estimates from Job Browser Pro and the BLS. *Id.* Mr. Perez argues that such a vast disparity between the VE's testimony and the estimates from Job Browser Pro and BLS indicates that the VE's testimony cannot constitute substantial evidence. *Id.*

In support, Mr. Perez relies on two Eleventh Circuit cases: *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020), and *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1319 (11th Cir. 2021). Mot. at 11.

 In *Goode*, the Eleventh Circuit held that when an ALJ relies on a VE's testimony regarding the number of jobs available in the national economy that the claimant could perform, "that testimony cannot be both internally inconsistent and incomplete." 966 F.3d at 1285-86. The Eleventh Circuit also recognized, however, that *Goode* was "not a case in which the claimant failed to challenge or question the [VE's] methodology or job numbers." *Id*. at 1284 n.3. Rather, the record showed that the claimant there made several attempts during her hearing to question the VE about his flawed testimony and credibility, but the ALJ had cut the claimant's questioning short by urging her to "move on." *Id*.  Similarly, in *Viverette*, the claimant challenged, on cross-examination, the VE's testimony regarding the number of jobs available nationally. 13 F.4th at 1319. Thus, the Eleventh Circuit found that remand was appropriate because there was evidence in the record that that the number of positions estimated by the VE may have been overstated and the ALJ failed to investigate the discrepancy. *Id*.

Mr. Perez also cites SSR 00-4p for the proposition that the ALJ had a duty to resolve the disparity between the VE's job number estimates and those presented by Mr. Perez. Mot. at 12.

In response, the Commissioner first argues that the Court does not need to address Mr. Perez's arguments regarding the ALJ's step five finding because Mr. Perez failed to show reversible error at step four. Resp. at 10. Moreover, the Commissioner contends that Mr. Perez is foreclosed from challenging the VE's testimony regarding the numbers of rack loader

and drier attendant jobs in the national economy because he did not object to or challenge the VE's testimony during the hearing. *Id.* at 10-11. The undersigned agrees.

Work exists in the national economy when it exists in significant numbers in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). The ALJ, relying on a VE's testimony, determines whether a specific number of jobs constitutes a significant number. 20 C.F.R. § 404.1560(c); *see Phillips*, 357 F.3d at 1240. If a claimant does not demand the underlying evidence supporting a VE's testimony, the VE's "testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019); *see also Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (per curiam) (finding the ALJ was entitled to rely on VE's testimony about the number of jobs available in the national economy because the claimant did not object to the VE's testimony, did not question the VE's qualifications, and did not present the occupational employment statistics to the ALJ, which also foreclosed the Eleventh Circuit's consideration of the data in the occupational employment statistics on appeal).

As a preliminary matter, the ALJ found at step four that Mr. Perez can perform his past relevant work, and, as set forth above, Mr. Perez failed to demonstrate that the ALJ's finding was not supported by substantial evidence. (R. 25) Therefore, any potential error in the ALJ's alternate step five analysis is harmless because it would not affect the outcome of Mr. Perez's case. *See Jones*, 492 F. App'x at 73; *see also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (affirming ALJ decision that included harmless factual errors). Even so, the undersigned finds that the Court is foreclosed from considering the new evidence now offered by Mr. Perez because he did not present that evidence before the ALJ and, unlike the

claimants in *Viverette* and *Goode*, Mr. Perez did not challenge or object to the VE's methodology or testimony concerning job numbers during the hearing. Thus, the VE's testimony is the only evidence regarding the number of jobs available in the record. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (on appeal from an ALJ's decision, courts only consider evidence that was actually presented to the ALJ to determine whether the ALJ's decision is supported by substantial evidence).[4]

The undersigned finds that the Court is foreclosed from considering the new evidence presented by Mr. Perez in the Motion, and, as such, Mr. Perez has not established that the ALJ erred when she considered the VE's job estimates as substantial evidence because that is the only evidence regarding the number of jobs available in the record. *See Biestek*, 139 S. Ct. 1148, 1155 (2019).

The undersigned is also not persuaded by Mr. Perez's reliance on SSR 00-4p. As set forth above, the SSR 004-p only requires the ALJ to identify and resolve apparent conflicts between the DOT and the VE's testimony. This provision does not require the ALJ to inquire *sua sponte* into the foundation for the VE's testimony concerning the number of relevant jobs in the national economy. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Nor does Mr. Perez point to any case, regulation, or statute suggesting that the ALJ must *sua sponte* take administrative notice of economic data when the claimant did not raise an issue with job numbers during the hearing.

---

[4] The Eleventh Circuit has consistently held that it will not consider data on appeal from an ALJ's decision where the claimant did not object to the VE's testimony during the hearing. *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 675 (11th Cir. 2019); *Valdez v. Commissioner of Social Security,* 808 F. App'x 1005, 1009 (11th Cir. 2020); *Bacon*, 861 F. App'x at 320.

Thus, to the extent Mr. Perez's Motion is based on the VE's alleged overstatement of available job numbers, for the foregoing reasons, the undersigned recommends the Motion be denied.

## VII.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above and based on the record before this Court, the undersigned finds that Mr. Perez has failed to demonstrate that the ALJ's decision was not supported by substantial evidence or that the correct legal standards were not applied.

Accordingly, the undersigned respectfully recommends that the Decision of the Commissioner be **AFFIRMED**, that Plaintiff's Motion for Summary Judgment [ECF No. 18] be **DENIED**, and that Defendant's Motion for Summary Judgment [ECF No. 21] be **GRANTED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

     **RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 3<u>rd</u> day of November 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Marcia G. Cooke, *U.S. District Judge*
Counsel of Record